Good morning. May it please the Court, my name is Sebastian Kaplan, appearing on behalf of Fenwick and West, and representing the petitioner, David Michael Graves, who appeals from the District Court's denial of his habeas petitions. I'd like to reserve four minutes for rebuttal. You bet. Although we will concede on, after reviewing the cases cited in the government's letter, that they were not required to file a protective cross appeal, the fact remains that the California Court of Appeal has already and finally determined that the exclusion of John Hinckley's testimony was a constitutional error. Putting aside the issue of the procedural bar for the moment, that leaves the narrow issue on appeal of whether or not the exclusion of that testimony was harmless. It was not. John Hinckley would have provided powerful and corroborative testimony that another man, Scott Castile, confessed to the murder of the victim, in this case, Gary Tutt. The Supreme Court in Holmes v. South Carolina and this Court on numerous occasions, including Earp v. Cullen and Sanders v. Rattell, has held that the exclusion of testimony regarding third-party confessions is prejudicial. And in those cases, the evidence against the defendant was far stronger than in this case. In fact, the prosecution's case here is surprisingly weak and comes nowhere near the standard of overwhelming evidence. There is no physical evidence against Mr. Graves, and there is no confession, at least not by the defendant. Furthermore, the eyewitness testimony is weak. Not a single eyewitness testified that Graves was the shooter. In Heard v. Terhune, this Court held that when the prosecution's case was based entirely on eyewitness testimony, the inclusion of the prosecutor's reliance on post-Miranda silence was prejudicial. Here, the exclusion of a third-party confession is far more prejudicial than the inclusion of post-Miranda silence, and therefore, the error cannot be deemed to be harmless. Moreover, the prosecution's case was based on eight witnesses, none of whom claimed to see Graves shoot Tutt, and all of whom either admitted to being under the influence of methamphetamines the morning of the event or had a history of methamphetamine use. The prosecution's primary witness, Donald Chabelle, admitted to having a vendetta or a motive against the defendant who had apparently set him up in a drug sting some time before. Now, the government responds to this by attacking the credibility of William Barnhart, the one witness who did testify that Scott Castile confessed. That makes absolutely no sense. In fact, the less credibility that Mr. Barnhart has, the more essential Hinckley's testimony is to corroborate the idea of Castile's confession and to cure the errors that were contained in Barnhart's rendition of that event. It would be the other way around. Roberts. What exactly is the constitutional error here? The constitutional error is the trial court's failure to adequately inquire into Mr. Hinckley's good-faith invocation of the Fifth Amendment. What Supreme Court case says the trial judge has to do that? Hoffman v. United States, 1951. Roberts v. United States. What does Hoffman hold? Hoffman held that the trial court must make a particularized inquiry into the good-faith basis for a witness to invoke the Fifth Amendment before refusing to testify. So the question is whether or not it was harmless error for Hinckley's testimony to be excluded merely because William Barnhart had also testified that Castile had confessed on a separate occasion. Remember, the two witnesses would have testified that Castile confessed not once, but twice. And there is no reason to think that Hinckley's testimony would contain the same errors that William Barnhart's testimony contained. Follow-up on Judge Silverman's question. What more should the trial judge have done here? He brought the witness in and appointed a lawyer for him and allowed the lawyers to question him. What more should he have done? Well, that's a fair question, Your Honor. But I think the California court of appeal has already held that it was an error. But there is nothing else that the trial court could have done, because in this case, John Hinckley had no good-faith basis for invoking his Fifth Amendment rights. In a hypothetical situation where a witness did have a good-faith basis for invoking his Fifth Amendment rights, it would be necessary for the attorneys to question the witness outside the presence of the jury until one of the questions created a basis for the judge to find that the witness had a reasonable fear of incriminating himself. But the questions that were asked here simply didn't give rise to such a presumption. Mr. Hinckley testified on the stand that he wasn't at the scene of the crime, which was the only theory for why his testimony would be incriminating that was offered by his attorney before the court. The court had no other basis to determine that Hinckley had a good-faith basis for invoking the Fifth Amendment. So given the fact that Hinckley's testimony was absolutely essential to provide the jury with a reasonable basis for finding that it was plausible for Castile to have confessed to the murder, it was prejudicial to exclude his testimony, and it is necessary to grant habeas relief on that ground. Now, the only remaining issue as to whether or not Mr. Graves' murder conviction is entitled to habeas relief is whether or not he can bring that claim following Walker v. Martin. And I think that a careful examination of the Supreme Court's decision in that case reveals that Walker v. Martin presents no problem for Petitioner here. Walker v. Martin addressed whether or not the California Timeliness Bar was adequate. And adequacy is subject to two different interpretation or two different rules. First, whether or not the California Timeliness Bar was clear, whether it was clarified by California Supreme Court precedent, and whether it was consistently applied. Now, Walker v. Martin was mostly about whether or not the rule was clear, but also addressed the government's evidence that met the government's burden of proof of showing that that rule was consistently applied. The evidence relied on by the government was a survey of California Supreme Court decisions from 2002 to 2007. As the district court noted before, that evidence, that survey evidence, has no probative value for whether or not the rule was consistently applied in the year 2000, the time at which we need to evaluate whether or not Graves procedurally defaulted on his claim under the Fifth Amendment. Because that evidence has no probative value, then Walker v. Martin simply --- Same rule, though. It's the same rule, which might go to whether or not it was clear in 2000, but not whether or not it was consistently applied. To determine whether or not there was consistent application of the rule, it's necessary to look at how the Supreme Court decided cases that raised the Timeliness Bar. To do that, one can simply do a search in Westlaw or Lexis of cases that cite In re Clark or In re Robbins, and determine the number of cases that the Supreme Court relied on those cases to dismiss habeas appeals. That's how the government and the petitioner in Martin v. Walker, the district court, presented evidence as to the consistency or inconsistency of the application. But the only- Kennedy, did you do that? I did, Your Honor. Because you don't want to find out the answer. Well, first of all, I- It's not your burden. I did not want to. It's not our burden. It's the government's burden of proof. That's clearly established in King v. Lamarck, which the Supreme Court did not overrule. I did the search, and I'm happy to tell you the results, but I understand it's not on the record, and this isn't a fact-finding body, although it's merely a number of Lexis searches, but about half of the cases in the California Supreme Court cited Clark and Robbins in 2000, and only 18 percent in 2002. Between 2007 or 2002 and 2007, it was only, on average, 25 percent. But your clerks can verify that. If the Supreme Court said that the rule was generally fairly applied, then isn't it your obligation to show that as to your case, it wasn't fairly applied? Wouldn't that mean, then, that you would have to make some showing beyond just saying, hey, we're a couple years earlier? Your Honor, I don't read Walker v. Martin as saying generally for all time. It also says that based on the record before it, the rule had been consistently applied. So, yes, generally from 2002 forward, it is now back on the Petitioner to make the determination, which was something that is required normally for determining the adequacy of a State procedural bar. But in this case, the government has already had its opportunity to present evidence that the rule was inconsistently applied, and the only evidence that relied on was the same survey presented in Martin v. Walker. At that time, under King v. Lamarck, and I don't think this is changed by Walker v. Martin, the Petitioner was permitted to rely on Morales in establishing that the time when this bar was inconsistently applied. Morales, the 1993 Ninth Circuit decision that initially held that this rule was inconsistently applied in capital cases. And that's the subject of King v. Lamarck, which holds that it's enough for a Petitioner to cite that case in showing that the timeliness bar was inconsistently applied. So the last point that I would like to make before reserving my remaining time for rebuttal is that I would strongly encourage the panel to order the government to respond to the uncertified issue on appeal. Mr. Graves got in a knife fight with another man who admitted to being on methamphetamines. At trial, his counsel presented zero witnesses in his defense. Mr. Graves was the only person who testified. Not a single soul came to corroborate his story that he did not go to the alleged victim's house to start the fight. Despite the fact that counsel at that trial attempted to find the person who was employing Mr. Graves that morning to show that he had a legitimate reason to be in the area where the knife fight occurred, and despite the fact that there was contestable physical evidence regarding where the knife wounds occurred on both the alleged victim and Mr. Graves, and physical evidence regarding the subject of the property and whether or not Mr. Graves was lying in wait, it was not until Mr. Graves received counsel in a second premeditation trial that those witnesses were actually brought forward in his defense. Now, at that point, the jury was already instructed that Mr. Graves was guilty of attempted murder. That's simply unjust. Those witnesses or similar witnesses should have been presented at the initial trial, and this Court's jurisprudence on failure to investigate is very clear that that was sufficient to meet the Strickland standard. Therefore, I urge the panel to order the government respond to those points. Thank you, Mr. Chairman. I'd like to reserve the remaining time for rebuttal. Thank you. Good morning. Good morning. Jill Thayer for Respondent. I'll start with the first issue about the ---- Hold the mic down a little bit. Thanks. About the adequacy of the inquiry. And it's our position that Walker v. Martin absolutely applies in this case. It's procedurally barred. There's just no question about the application of Walker v. Martin. And I truly don't understand the argument that we have to go through adequacy of the inquiry in 2000. That makes absolutely no sense in this case. The issue was first raised in the California Supreme Court in 2004. The California Supreme Court denied it as untimely in 2005. That's when you consider the timeliness rule. In Walker v. Martin, just to compare the two cases, Walker v. Martin is before this case. So any argument about the timing does not assist Petitioner at all. Well, is your opponent, Mr. Kaplan, correct that in Walker v. Martin, the court depended upon a study that covered a certain period of time? No. That was before this case? No. That was the Ninth Circuit ruling, which was overruled. No. The actual Walker v. Martin, the Supreme Court ruling. They overruled it. I mean, it's based on the same record. That's true. But the Supreme Court did not discuss all those. I know that. But it was on the same record. That was before the Ninth Circuit. So the only study before it was the same study that was before the Ninth Circuit, right, which is that limited period of time. I forgot, 2000, 2002, something like that. That's all it could have been. So that's all. So that doesn't so your opponent's point is, well, that doesn't answer the question. Was it consistently applied at an earlier period? What supports a yes answer to that question? Well, the United States Supreme Court decision does not discuss the Ninth Circuit ruling except to overrule it. And I will say this. Martin's conviction was final in 1997. Mr. Graves' conviction was final two years later in 1999. Okay? Martin was before Graves all the way through. Martin's conviction. Everything you mean? Yes. You mean all the direct appeal and the collateral proceedings? Everything was before. Martin's conviction was final in 1997. Graves' conviction was final in 1999. Martin's petition was filed and State habeas petition was filed and denied as untimely in 2002. Graves' petition was filed in 2004, denied as untimely in 2005. Every step of Graves' was two or three years after every step in Martin. After Martin. There's just no question about it in this case. There's nothing to be said. Martin was before Graves. That's all there is to it. King v. Lamarck is overruled. Okay? All those cases that say California's untimeliness bar is inadequate are overruled by Walker v. Martin. That's just. Well, I don't think he's contesting that part anymore, does he? He meaning the petitioner here? Okay. So this is, it's procedurally barred, and I'll just say on cause and prejudice, there's no right to counsel. The only question he's raising is what is the showing here that the rule was consistently applied? And you're saying, well, we don't have to make a showing because this is post-Martin. That's correct. And the State doesn't need to make a showing on every single case after Walker v. Martin. They just, this Court can read Walker v. Martin and apply it. That there's no burden on the State to continue to discuss the adequacy of California's timeliness waiver. The Court just needs to follow Walker v. Martin. That's how it works, and it's procedurally barred. What did Hoffman v. United States hold? Hoffman is holding that the petitioner in that case, or the defendant in that case, properly invoked the Fifth Amendment. And basically what it talks about is how broadly the Fifth Amendment is applied. It's to be broadly construed. The answer cannot possibly have any tendency to incriminate. And it also says, in this case especially as important, is that the Court can base its ruling upholding a Fifth Amendment invocation based on its perception, its experience, its sense of the case, and not just the facts and evidence. So it's making a very broad statement about how important the Fifth Amendment is and how broadly it's to be construed. Does it lay down any standards on the inquiry that has to be made in order to determine whether the privilege is properly invoked? There's nothing about procedurally. Does it feel that way? They're okay. Hoffman doesn't describe the procedure to use. And in that case, that helps the State. Because just like in Renico, I don't know how to say that, just because the trial court could have done more, if the United States Supreme Court hasn't said you must do more, that doesn't mean the United States Supreme Court, that means it's not an objectively unreasonable application. The United States Supreme Court has also held that it doesn't matter if the information itself is not inculpatory, as Mr. Hinckley denied being at the scene, although other witnesses said he was at the scene. And basically that's where we are with the Fifth Amendment. Now, when we look at U.S. Supreme Court cases talking about denying a defendant the right to present the defense and compulsory process, all those broad cases, none of them involve the Fifth Amendment. They all tend to involve State evidentiary rules, such as in Crane, it had to do with a Kentucky rule of procedure about the voluntariness of a confession. In Chambers, it had to do with Mississippi's strict rules of evidence with respect to their hearsay and voucher rules. And in Washington v. Texas, it had to do with a Texas statute not allowing accomplices and co-defendants to testify for or against each other. Here we have a biggie. We have the Fifth Amendment. And there's nothing in any United States Supreme Court authority that talks about the juxtaposition of right to present evidence. They talk about that in its main term, right to present a defense, right to compulsory process. There's just nothing, no clearly established U.S. Supreme Court authority that discusses how to balance those competing interests. The only case we do have is the one that says that a defendant cannot force a defense witness to waive their Fifth Amendment rights. And that's what we have here, trying to get them to waive it. And you can't do it. What's your response to Mr. Kaplan's argument on harmless error? Well, we shouldn't even get there. But Mr. Stott, we do have some evidence, direct evidence. Stott told the police he saw Mr. Graves shoot Mr. Tutt. That's what he told the police. Then, after he and his family were being threatened, he went back at the preliminary hearing testimony, and he just said he was there, he saw the petitioner had a gun, and someone shot him, but he didn't know exactly what. But this is after he was being threatened. And it is interesting to note, and I think the court can consider the fact that Mr. Tutt himself was killed because he was a snitch. And ultimately, Stott disappeared. So these are very scary people that are all being threatened. And so the jury had to go through that. But the critical part about this is, okay, so Mr. Barnard was, you know, he had many, many convictions. He was not a believable witness or a credible witness. But the point is, Mr. Castile, you have to believe, to believe this confession, you have to believe what Castile said was true and what either Hinkley or Barnard said was true. Nothing that Castile allegedly told Barnard had anything to do with this crime. He was wrong about the who, what, where, why, how, not the why. He definitely said Tutt was a snitch, and that's why he was killed. So that's the why. But as far as where the murder happened, how it happened, when it happened, who was there, it was all totally undermined by the physical evidence and the testimony and statements of Snap, Shivel, Howe, Nash, and Stott. Everything about Castile's confession, nothing Castile said was even remotely believable. So the idea that Castile's theoretical confession to Hinkley would have added anything to this is ridiculous. His confession was preposterous. And also it would have contradicted Hinkley, and he also said Hinkley was there. So nothing Hinkley said could have possibly helped Mr. Graves. The jury rejected this Castile did it theory. And Hinkley's statement that Castile supposedly confessed to him too, and that's all, would not have added anything to it. Plus, all of the witnesses said he wasn't there. All the witnesses who actually testified and who were there, Stott, Snap, Shivel, Howe, they all said they knew who Castile was and he wasn't there. So this is just, I mean, just straight-on harmlessness, which really there are many, many steps to even get to that point, and this court shouldn't even get to harmlessness, but it is harmless. So there's just no reason to even disagree with a district court's ruling. And I'll just, I just want to say, as far as the other, I don't know if this court wants me to talk about the attempted murder issue, the ineffective assistance, the Strickland standard, and that is discussed, of course, in Harrington v. Richter, and this court I know is very aware of that standard. The state court's ruling has to be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement. And Strickland is deferential. Under AEDPA, it's doubly deferential. Here, the first jury couldn't even reach a verdict on whether the attempted murder was willful, deliberate, and premeditated, while the second jury, who had all the additional evidence, ended up finding the attempted murder willful, deliberate, and premeditated. If the second jury, who had all the extra stuff, evidence, believed his story, Mr. Graves' story and the witnesses', it wouldn't have found that the attempted murder was willful, deliberate, and premeditated. All of the evidence is just hired guns. Mrs. Rice, the person who supposedly hired him, that testimony could have gone either way. Well, he was in the neighborhood. We admit he was in the neighborhood. He was in the neighborhood so that he could kill, you know, attempt to kill Mr. McKenzie. I just also noticed that Petitioner's cases, Lord, Brown v. Myers, and Sanders v. Rattell are all pre-AEDPA. Ross v. Patrick, which was also relied on by Petitioner, that opinion was withdrawn and the denial of the petition was affirmed in light of Richter. So those cases are just not at all useful. There's no evidence that the prosecutor ever threatened Mr. Hinckley. That's a ridiculous claim. There's this theory that the attorney, Mr. Doty, said something to Mr. Hinckley, but that is not attributable to the prosecution, and any suggestion that it is is just pure speculation. That's not a reason to grant the writ. And I agree, the denial of immunity wasn't even raised in the second or third petitions, which are the operative petitions. There's no way that a Petitioner can simply, in this case, the Petitioner filed four petitions, and courts just can't be required to dig through every single petition that's ever been filed by any Petitioner to try and find a claim that was raised and then re-raise it. That's why the district court didn't reach it. But in any event, there's no U.S. Supreme Court authority that says that a prosecutor or court needs to grant immunity. And immunity is immunity. Saying I'm not going to prosecute you because I believe you is saying that, but immunity is not saying I'm not going to prosecute you. Immunity is a big deal. So with that, I'll submit. Thank you, Ms. Thier. Mr. Caplan, you have four minutes left, I believe. I'd like to cover three subjects. First, on harmless error, the government is correct that William Barnhart testified that Castile got some of the errors wrong. That goes to Barnhart's credibility, not Castile's. Hinckley could have given a version of Castile's testimony that cured those errors. Just as if you hear a story from a notorious gossip and a credible witness, it's unreasonable to disbelieve the gossip if the credible witness says that the same thing happened. The three witnesses that the government identified as not seeing Castile were all inside the house at the time that the shooting occurred outside and would not exclude the possibility that Castile was the shooter. As to Walker v. Martin, the government is flat wrong about the timing. This Court in Fields v. Calderon held that it is the time that the petitioner determines the period of time when this Court evaluates the adequacy of a procedural bar. Graves filed his petition in April of 2000. That's the period of time that this Court evaluates to determine the adequacy issue. Furthermore, Walker v. Martin specifically relies on the survey evidence raised in the Ninth Circuit's briefing. It does so on page 1120 of that opinion. You will see that it relies on the opening brief, which refers to both the government's survey evidence and the petitioner's evidence during the Lexis searches that we discussed earlier. I think we can infer from that that as to any petitions filed before 2002 that the Supreme Court would have a different view of the timeliness. We can say, oh, that doesn't apply two years earlier. I don't think that we can infer that it was the same in 2000, Your Honor. And the government has certainly given us no reason to do so. My own limited research suggests that there was a significant difference between those years. And I think that it is on the government to determine that. And they can do so if they preserve those issues at the district court and argue them. But here they cited merely to the survey evidence raised in Martin v. Walker. It's not the finality of the conviction that's relevant. It's when Graves filed his petition in the California Supreme Court, April 2000. As to the Fifth Amendment adequacy and the procedures established by the Supreme Court, the cases relied on by the government, Arredondo, Rivas Macias, and Davis v. Straub, are all about whether or not a witness has to be invoking the Fifth Amendment in front of the jury or whether or not they can do so in outside the presence of the jury in, say, a 402 hearing. The courts have consistently held that it is fine for a witness to invoke the Fifth Amendment outside the presence of the jury. That's the kind of procedure that the courts have held the Supreme Court has not clearly established. But the Supreme Court has clearly established that a particularized inquiry into the good-faith nature of the witness's invocation must be made. And this Court, in Ert V. Ornowski, applied that in sending back a petition that claimed that a witness invoked the Fifth Amendment without justification. So you're really objecting to the trial court's finding on whether he could take the Fifth, not to the nature of the trial court's inquiry into that question. You just think the trial court reached the wrong conclusion, not that the inquiry was insufficient. No, Your Honor. As the California court of appeal held, the inquiry was unacceptable, it was inadequate, and as Judge Ilston noted, it was unacceptably shallow. The court heard approximately five questions asked of Mr. Hinckley. The only one which could possibly have incriminated him was whether or not he was there. He answered that question before invoking the Fifth Amendment. And then there was a hearing outside the presence of the attorneys where the person appointed to represent Mr. Hinckley claimed that he knew almost nothing about the case and was not really prepared to speak on behalf of his client. That inquiry was not adequate to show that Hinckley had a good-faith basis. And Mr. Hinckley has filed two declarations, two separate declarations, that he would have testified and that he had no fear of incriminating himself. I think that that evidence is probative of the fact that he had no good-faith basis for his invocation of the Fifth Amendment at the time of the trial. And for that reason, I think that you have to evaluate if the error was harmless. And it absolutely was. Roberts. Thank you, Mr. Campa. Mr. Thera, thank you. The case just argued is submitted. Mr. Campa, we want to thank you and your firm for accepting this pro bono case. We appreciate that very much. We will stand and recess for the morning. Thank you. Thank you.
judges: Adelman, Tashima, Silverman